UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LUKENS MARTELUS,

    Plaintiff,

v.                                    Case No. 3:17cv242-LC-CJK

JOSHUA HATTAWAY, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on defendant Ashley McIver's motion to dismiss the amended complaint. (Doc. 32). Plaintiff responded in opposition (doc. 40) and defendant filed a reply (doc. 46). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the parties' submissions, the undersigned recommends that defendant's motion to dismiss be granted.

## BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at the Reception and Medical Center in Lake Butler, Florida. The amended complaint names three correctional officers of Okaloosa Correctional Institution ("Okaloosa CI") as defendants: Joshua Hattaway, Timothy Butler, and

Sonny Teboe. (Doc. 4). The amended complaint also names movant Ashley McIver, a nurse at Okaloosa CI, as a defendant. (Doc. 4). The complaint sets forth the factual allegations that follow.

While located at Okaloosa CI on August 18, 2015, at approximately 10:30 p.m., plaintiff declared a "'medical emergency' due to having acute pain and muscle spasms in his lower back." Sergeant Hattaway and Officer Butler escorted plaintiff out of the cell block and into the dorm's sally port. Plaintiff then conveyed his symptoms to Sgt. Hattaway, who "voiced his displeasure with the [p]laintiff, accusing him of being under the influence of an unknown stimulant." Plaintiff assured Sgt. Hattaway he was not under the influence. Plaintiff told Sgt. Hattaway he "was in severe pain begging [Sgt.] Hattaway to 'Please help me.'"

Sgt. Hattaway stated, "'You better have something wrong with you because if you don't you will when we're done with you nigger!'" Plaintiff then "peaceably submitted to leg restraints and was placed in a wheelchair" for transport "to medical for evaluation due to his inability to walk because of the amount of pain he was in." During transport, Sgt. Hattaway and Officer Butler "continued to exhibit hostile attitudes towards [p]laintiff asking what was wrong with him" and complaining about having to "'do all this extra work so late at night.'"

In response, plaintiff explained that he "believe[d] he may have seriously injured himself a couple days prior while exercising." Sgt. Hattaway "became

Case No. 3:17cv242-LC-CJK

irate[,]" "began to strike [p]laintiff in the back of his head[,]"and "dumped [p]laintiff out of the wheelchair onto the ground[.]" Officer Butler "picked [p]laintiff up off the ground and roughly dropped him back into the wheelchair[.]" Sgt. Hattaway and Officer Butler then continued transporting plaintiff to the medical department.

Upon arriving in the medical department, plaintiff "attempted to inform" Nurse McIver of "the nature of his medical emergency[.]" Plaintiff, however, was "cut off" by Sgt. Hattaway who "instructed [Nurse] McIver to 'go ahead and clear him for confinement ain't nothing wrong with him[.]'" Plaintiff requested to see the Captain but the request was denied. Plaintiff claims Nurse McIver, during the screening, "exhibited a reckless and callous deliberate indifference to [p]laintiff's serious medical needs, conspiratorially working in concert with defendants Hattaway and Butler by completely disregarding [p]laintiff's claims of injury and the need for treatment[.]"

Sgt. Hattaway, Officer Butler, and plaintiff exited the medical department. "While approaching the confinement building[,]" Sgt. Hattaway became "'fed up' with [p]laintiff's requests to speak with the Captain[.]" Sgt. Hattaway "maliciously snatched [p]laintiff out of the wheelchair and sadistically slammed him face down on the ground[,] falling on [p]laintiff with the entirety of his 250 lbs+ body weight[.]" Sgt. Hattaway then notified Captain Teboe "of the use of force." For "approximately 2-3 minutes[,]" Captain Teboe and Officer Butler "stood by

Case 3:17-cv-00242-MJF   Document 48   Filed 08/01/18   Page 4 of 20

Page 4 of 20

witnessing" Sgt. Hattaway "unnecessarily twisting [p]laintiff's arm behind his back intentionally inflicting pain while striking [p]laintiff about his head and face with his radio[.]"

Plaintiff again saw Nurse McIver in the medical department for a "post-use of force" evaluation. McIver reported plaintiff had no physical injuries. Plaintiff asserts McIver "disregarded [p]laintiff's claims of injury" and refused to report his complaint of "excruciating pain[.]" Nevertheless, Nurse McIver gave plaintiff ibuprofen. After the evaluation plaintiff was taken to confinement and thrown to the floor of his cell.

Plaintiff next charges Captain Teboe, in violation of "'post-use of force' policy and procedure," "refused to have [p]laintiff re-evaluated by medical staff[.]" On August 19, 2015, plaintiff told Captain Carl Westbrook, II, about "the actions that transpired the previous night[.]" Seeing plaintiff's "obvious pain, severe swelling of his right wrist and difficulty walking[,] Captain Westbook immediately had [p]laintiff re-evaluated by Nurse Denise Carrasquillo[.]" Nurse Carrasquillo "noted [p]laintiff's complaints of pain and injury." On August 26, 2015, Dr. Luis Lopez diagnosed a "'small nondisplaced fracture of the ulnarseloid bone,' this is located where the cuffs would be on the wrist[.]"

Based on the foregoing, plaintiff alleges defendant McIver violated the Eighth Amendment by denying plaintiff adequate medical treatment. As relief, he seeks

compensatory damages. Defendant McIver has moved to dismiss the amended complaint, arguing the allegations fail to state a claim upon which relief may be granted, and plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

## LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). A few exceptions exist to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2008). Further, only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). Mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a

legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or, "nudge[] the[] claim[] across the line from conceivable to plausible[.]" *Id.* at 570.

## DISCUSSION

<u>Exhaustion</u>

Defendant McIver argues plaintiff failed to exhaust his administrative remedies before bringing this suit. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth*, 532 U.S. at 734, 741. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See id.* at 741 n.6. Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied the plaintiff failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The grievance procedures promulgated by the Florida Department of Corrections generally require an inmate to: (1) file an informal grievance with a

designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). If an inmate files a grievance of reprisal, however, he may bypass the informal and formal grievance levels and file a grievance of reprisal directly with the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.007.

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to

exhaust administrative remedies, it must be dismissed." *Id.* (*citing Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (*citing Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Defendant's motion contends plaintiff failed to exhaust his administrative remedies because "[t]he only grievance pertaining to McIver's care is not addressed to that care—it is only mentioned in passing." (Doc. 32, p. 11). In response, plaintiff asserts he filed a direct grievance to the Secretary of the FDOC.[1] (Doc. 40, p. 6). He argues that while the "grievance does not go into great detail about Ms. McIver's lack of medical care, it does nonetheless constitute the allowance of the Department to effectively address his claim." (Doc. 40, p. 7).

---

[1] Plaintiff, citing a fear of reprisal, bypassed the informal and formal grievance steps and filed directly with the Secretary. (Doc. 31-1, p. 26).

Two important purposes of the grievance procedure are to "put[] the institution on notice of an ongoing problem with treatment" and to "provide the institution an opportunity to internally address this issue over time." *Toenninges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015). More specifically, the purpose of the PLRA exhaustion requirement is "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Pearson v. Taylor*, 665 F. App'x 858, 866 (11th Cir. 2016) (*citing Parzyck*, 627 F.3d at 1219 (internal quotation omitted). In a grievance, an inmate is required to include "all relevant information reasonably available to him." *Brown v. Sikes*, 212 F.3d 1205, 1208 (11th Cir. 2000). "[I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2nd Cir. 2004); *see also Goldsmith v. White*, 357 F. Supp. 2d 1336, 1340 (N.D. Fla. 2005) (finding a failure to exhaust when claimant "not only failed to include all known facts; he failed even to identify the problem (discrimination based on sexual orientation) or to mention the core facts on which his claim was based (that he is homosexual, and that [defendant] used a bigoted reference to homosexuality when [defendant] took the action at issue).").

The relevant grievance is identified as log number 15-6-31022, and is dated August 21, 2015. (Doc. 4-1, p. 20-22). In the direct grievance to the Secretary,

plaintiff referenced his visits to the medical department on August 18, 2015. (Doc. 4-1, p. 20-21). In regards to plaintiff's initial visit to medical, which resulted from his declaration of a "medical emergency" due to back pain, plaintiff states:

> [W]hile in medical being examined by the nurse it is said that they have one for pre-confinement. The nurse in turn then asks Sgt. Haddaway who's pre-confinement? Sgt. Haddaway states that its me. I immidiately ask him why am I going to confinement? He stated that he didn't know, so I then told him I would like to speak too the captin. He told me I wasn't talking too no captin. So at this time I'm becoming quite upset too the point where the nurse can't even finish her examination because I'm steady stressing to Sgt. Haddaway that I need too see the captin. Sgt. Haddaway then tell's the nurse o.k. He's through. And starts pushing me out of the exam office.

(*Id.*, p. 20).

In this portion of the grievance, plaintiff never faults McIver or states he was not satisfied with the medical care he received. More importantly, plaintiff never alleges he fully informed McIver of his complaints of back pain. Not only did plaintiff fail to include all relevant information reasonably available to him, but he also neglected to either identify the problem (McIver's deliberate indifference to his serious medical need) or mention the core facts on which his claim is based (that McIver failed to provide appropriate medical care in response to plaintiff's complaints of back pain). This direct grievance, therefore, did not put the FDOC on notice of McIver's alleged deliberate indifference and did not provide the FDOC the opportunity to internally address the issue. *See Goldsmith*, 357 F. Supp. 2d at 1340.

With respect to the post-use-of-force exam, plaintiff wrote:

> Upon my arrival at medical I explain to the nurse what has taken place. But, the nurse acts as if she doesnt believe what I'm saying. Even though I'm showing her these fresh bruises and marks on my hands and face. So after she's examined me I'm taken too confinement.

(*Id.*, p. 21).

In this portion of the grievance, plaintiff never mentions wrist pain or claims he informed McIver of the wrist injury. Similarly, plaintiff does not allege he received inadequate medical care during the post-use-of-force exam. A grievance must be closely tailored to the claim ultimately brought in court, yet plaintiff's grievance failed to either identify the problem (McIver's deliberate indifference to plaintiff's serious medical need) or mention the core facts on which his claim is based (that McIver failed to provide appropriate medical care in response to plaintiff's complaints of wrist pain or injury). Because neither McIver's care nor the wrist injury are mentioned in plaintiff's grievance, the FDOC and prison officials were not put on notice of the problem or given the opportunity to internally address the issue prior to the suit.

Furthermore, the final portion of the grievance makes clear the grievance is about Hattaway's actions, not McIver's. Plaintiff states, "Now this is a clear case of physical and verbal assault by Sgt. Haddaway, and a violation of the officer's conduct code that's established in ch. 33." (*Id.*, p. 21). Plaintiff requests the "allegations be taken and thoroughly investigated[,]" emphasizing "[he] would like

to let it be known that [he's] also going to go through to the fullest extent with this all the way too charges being filed against Sgt. Haddaway." (*Id*., p. 22).  Based on the record before the court, plaintiff failed to exhaust his administrative remedies because he did not, in his grievance, allege he received inadequate medical care from McIver during either the initial examination for his back pain or the post-use-of-force exam.

<u>Deliberate Indifference</u>

Even assuming plaintiff exhausted his administrative remedies, he has failed to state a claim for deliberate indifference as to movant.  A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) ("Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration.").  "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1306-07 (11th Cir. 2009).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (internal citation and quotation marks omitted). "Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances." *Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) (*citing McElligott v. Foley*, 182 F.3d 1248, 1255–59 (11th Cir. 1999)). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Mann*, 588 F.3d at 1307 (*quoting Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To show deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (*quoting Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To support deliberate indifference, the defendant's response to the medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Prison officials may avoid Eighth Amendment liability by showing, for example: (1)

"that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Plaintiff alleges defendant McIver exhibited deliberate indifference to his serious medical needs on two distinct occasions—when he initially presented to the medical department, and when he returned following Sgt. Hattaway's use of force. On the first occasion, plaintiff had declared a medical emergency, complaining of "acute pain and muscle spasms in his lower back." (Doc. 4, p. 4). He, however, does not allege he suffered from a back condition diagnosed by a physician as mandating treatment, or presenting obvious signs of a severe medical need. Plaintiff's subjective complaints of lower back pain are not sufficient to establish a serious medical need. *See Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) (finding "lower back pain is not the type of serious condition this circuit requires" because it does not pose a substantial risk of serious harm if left untreated).

Furthermore, plaintiff has not established McIver was deliberately indifferent to his complaints of back pain. Plaintiff failed to allege facts suggesting McIver had subjective knowledge of a risk of serious harm. Although plaintiff went to the medical department with complaints of back pain, he does not say he relayed these

complaints to McIver. In the amended complaint, plaintiff does not claim he informed McIver about the specifics of his physical condition. Rather, plaintiff alleges he "attempted to inform . . . McIver of the nature of his medical emergency but was however cut off by defendant Hattaway whom . . . instructed defendant McIver to 'go ahead and clear him for confinement ain't nothing wrong with him[.]'" (Doc. 4, p. 6). Plaintiff then became upset, stating, "'[Y]ou can't do this to me, I haven't done anything.' 'I want to see the Captain!'" (*Id*.). Plaintiff does not allege he continued his efforts to inform McIver of his back pain once notified of his pre-confinement status. Instead, once plaintiff realized he would be transported to confinement, his focus shifted and he began requesting to see the captain. Plaintiff, therefore, has not alleged facts showing McIver knew plaintiff's condition posed a risk of serious harm. Accordingly, plaintiff has failed to state an Eighth Amendment claim against McIver based on the initial visit to the medical department.

On the second visit, during the post-use-of-force exam, plaintiff complained of being in "excruciating pain." (*Id*., p. 8). In the complaint, plaintiff does not allege he had signs of injuries at the time of the post-use-of-force exam. Nevertheless, in a grievance, plaintiff says he showed McIver "fresh bruises and marks on [his] hands and face."[2] (Doc. 4-1, p. 21). Minor bruises and marks, however, are not a serious

---

[2] Plaintiff attached several grievances and the emergency room record for the post-use-of-force exam to the amended complaint. (Doc. 4-1, p. 6, 20-28). The court may consider these materials when ruling on McIver's motion to dismiss. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277

medical need. *See Fernandez v. Metro Dade Police Dept.*, 397 F. App'x 507, 512 (11th Cir. 2010) (holding, as a matter of law, facial bruising is not an objectively serious medical need). McIver concluded "Ø physical injuries noted[,]" provided plaintiff with five packs of ibuprofen in response to his complaints of pain, and scheduled a nursing check for the following morning. (Doc. 4-1, p. 6). Although plaintiff claims McIver incorrectly filled out the medical documents during the post-use-of-force exam, that is not relevant to the deliberate indifference claim, because it does not relate to care McIver provided.

"[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1999). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir. 1996). Ordinarily, the "failure to administer stronger medication" is a "medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." *Adams v. Poag,* 61 F.3d 1537, 1547 (11th Cir.1995). McIver's failure to provide more than ibuprofen in response to plaintiff's complaints of pain is not the type of indifference targeted by § 1983.

---

(11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

Case No. 3:17cv242-LC-CJK

Plaintiff further alleges his "obvious pain, severe swelling of his right wrist, and difficulty walking" were so apparent to Captain Westbrook the following day that plaintiff was immediately evaluated by Nurse Carrasquillo for the follow-up post-use-of-force exam.  (Doc. 4, p. 10).  Plaintiff claims he was later "properly diagnosed . . . as having a 'small nondisplaced fracture of the ulnarseloid bone.'" (*Id.*).  Defendant McIver does not contest plaintiff's "nondisplaced fracture is a serious medical need." (Doc. 32, p. 9).

McIver's failure to detect plaintiff's wrist fracture similarly fails to support a claim for deliberate indifference.  Failure to detect a fracture may be negligence or malpractice, but it is not a constitutional violation under § 1983.  *Arceneaux v. Leger*, 251 F. App'x 876, 877 (5th Cir. 2007).  In *Arceneaux*, "[a]lthough the wrist fracture was not initially diagnosed, the fracture was not objectively obvious" and the inmate "told prison personnel that he would be all right[]" during his initial evaluation.  *Id*.  The court held that the district court did not err in dismissing inmate's deliberate indifference claim.  *Id*.

Here, plaintiff's wrist fracture was similarly not diagnosed during the post-use-of-force exam; the fracture was not diagnosed until an x-ray was conducted by Dr. Lopez on August 26, 2015.  (Doc. 4, p. 10).  In the amended complaint, plaintiff does not explicitly describe or allege wrist pain or injury at the time immediately following the use of force.  (Doc. 4, p. 8-9).  Without a specific complaint of wrist

pain, McIver lacked subjective knowledge and, therefore, could not have disregarded a known risk of serious harm.

Applying the *Arceneaux* rationale to the instant case, because McIver examined plaintiff during the post-use-of-force exam and plaintiff never explicitly complained of wrist pain or injury, plaintiff has not alleged facts showing the wrist fracture was objectively obvious or posed a risk of serious harm. McIver's failure to detect the fracture may have been negligent, but it does not rise to the level of a constitutional violation. *See Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 917 (11th Cir. 2017) (holding "what one medical professional determines at a later point in time does not support a claim of deliberate indifference."). Although plaintiff claims McIver "exhibit[ed] extreme indifference to [his] serious medical needs . . . denying [him] treatment in a cruel and unusual manner[,]" the medical decision not to order x-rays of his wrist is not cruel and unusual punishment and, is at most, medical malpractice. (Doc. 4, p. 13-14); *see Estelle*, 429 U.S. at 107. Accordingly, the complaint does not contain factual allegations, which, taken as true, are sufficient at this stage to state an Eighth Amendment claim against McIver because the complaint does not demonstrate defendant was deliberately indifferent to a serious medical need.

Case 3:17-cv-00242-MJF   Document 48   Filed 08/01/18   Page 20 of 20

Page 20 of 20

Accordingly, it is respectfully RECOMMENDED:

That defendant McIver's motion to dismiss (doc. 32) be GRANTED, and plaintiff's claims against McIver be DISMISSED.

At Pensacola, Florida, this 1st day of August, 2018.

>  /s/ *Charles J. Kahn, Jr.*
>  **CHARLES J. KAHN, JR.**
>  **UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.

Case No. 3:17cv242-LC-CJK