## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

LUKENS MARTELUS,

      Plaintiff,

v.                                 Case No.  3:17-cv-242-LC/MJF

JOSHUA D. HATTAWAY, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Lukens Martelus, an inmate proceeding *pro se*, brought this action under 42 U.S.C. § 1983 to allege violations of his Eighth Amendment right to be free of cruel and unusual punishment. (ECF No. 4). The two remaining defendants—Sergeant Joshua Hattaway and Officer Timothy Butler—have moved for summary judgment. (ECF No. 53). The Plaintiff responded and submitted an affidavit in opposition. (ECF Nos. 62, 63). For the reasons set forth below, the undersigned respectfully recommends that the District Court grant in part and deny in part Defendants' motion for summary judgment.[1]

---

[1] The case was referred to the undersigned to address preliminary orders and to make recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background

### A.    Overview of Plaintiff's Claims

In 2015, Plaintiff was a prisoner in the Okaloosa Correctional Institution, which is located in Crestview, Florida, and is operated by the Florida Department of Corrections. Plaintiff alleges that, on August 18, 2015, Defendant Joshua Hattaway ("Hattaway") used excessive force by slamming him to the ground, kneeling on his back, hitting him on the head and face, and twisting his arms from front to back, in violation of the Eighth Amendment. (ECF No. 4 at 4-11). Plaintiff further alleges that Defendant Timothy Butler ("Butler") failed to intervene and stop Hattaway's attack, also in violation of the Eighth Amendment. (*Id.*). Against both Hattaway and Butler, Plaintiff also alleges a claim of deliberate indifference to a serious medical need, in violation of the Eighth Amendment, and a claim of conspiracy to violate his constitutional rights.[2] He seeks compensatory and punitive damages from both Defendants. (*Id.* at 14-15).

### B.    Factual Background

In his verified amended complaint, Plaintiff alleges that on August 18, 2015, at approximately 10:30 p.m., Plaintiff indicated that he was experiencing a "medical

---

[2] Plaintiff also initiated claims against two other Defendants—Nurse McIver and Captain Teboe. (ECF No. 4 at 13-14). The district court dismissed Plaintiff's claim of deliberate indifference to serious medical need against Defendant McIver. (ECF No. 56). Plaintiff voluntarily dismissed Defendant Teboe from the matter after a failure to effectuate proper service of process. (ECF No. 52).

emergency" in that he was suffering pain and muscle spasms in his lower back. (ECF No. 4 at 4). Hattaway and Butler escorted Plaintiff out of the cell block and into the dorm's sally port. (*Id.* at 5). Plaintiff complained about his pain to Hattaway, who "voiced his displeasure with the Plaintiff, accusing him of being under the influence of an unknown stimulant." Plaintiff assured Hattaway he was not under the influence. (*Id.*). Plaintiff informed Hattaway that he was in severe pain. (*Id.*).

Hattaway purportedly stated, "'You better have something wrong with you because if you don't you will when we're done with you nigger!'" (*Id.*). Plaintiff claims that he then "peaceably submitted to leg restraints and was placed in a wheelchair" for transport "to medical for evaluation due to his inability to walk because of the amount of pain he was in." (ECF No. 4 at 5). While transporting Plaintiff, Hattaway "began to strike Plaintiff in the back of his head," and "dumped Plaintiff out of the wheelchair onto the ground." (*Id.*). Butler "picked Plaintiff up off the ground and roughly dropped him back into the wheelchair." (*Id.*). Hattaway and Butler then continued transporting Plaintiff to the medical department. (*Id.*).

Upon arriving in the medical department, Plaintiff "attempted to inform" Nurse McIver of "the nature of his medical emergency." (*Id.*). Plaintiff, however, was interrupted by Hattaway, who instructed McIver to "clear" Plaintiff and informed her that Plaintiff was fine. (ECF No. 4 at 6).

Afterwards, Hattaway, Butler, and Plaintiff exited the medical department. (*Id.* at 7). "While approaching the confinement building[,]" Hattaway became "'fed up' with Plaintiff's requests to speak with the Captain." (*Id.*). Hattaway snatched Plaintiff out of the wheelchair and slammed him face down on the ground, "falling on Plaintiff with the entirety of his 250 lbs+ body weight." (*Id.*). Hattaway then notified Captain Teboe "of the use of force." (ECF No. 4 at 7). For "approximately 2-3 minutes[,]" Teboe and Butler stood by while Hattaway twisted Plaintiff's arm behind his back and intentionally inflicted pain by striking Plaintiff's head and face with a radio. (*Id.* at 7-8).

Plaintiff again saw McIver in the medical department for a post "use of force" evaluation. (ECF No. 4 at 8). McIver reported that Plaintiff had no physical injuries. (*Id.*). Plaintiff asserts McIver "disregarded Plaintiff's claims of injury" and refused to report his complaints of pain. (*Id.*). Nevertheless, Nurse McIver gave Plaintiff ibuprofen. (*Id.* at 8–9). After the evaluation Plaintiff was taken to confinement and thrown to the floor of his cell.[3] (*Id.* at 9-10).

On August 19, 2015, Plaintiff told Captain Westbrook about "the actions that transpired the previous night." (ECF No. 4 at 10). Seeing Plaintiff's "obvious pain,

---

[3] Officers carrying and depositing Plaintiff in a confinement cell constituted a secondary use of force. (*See* ECF No. 53-5, Ex. E at 5) ("Additional force was utilized during the escort of the inmate to his assigned cell by physically carrying the inmate."). Plaintiff claims that his fractured wrist and permanent scar resulted from the primary use of force, not this secondary interaction with Hattaway.

severe swelling of his right wrist and difficulty walking[,] Captain Westbook immediately had Plaintiff re-evaluated by Nurse Denise Carrasquillo[.]" (*Id.*). Nurse Carrasquillo "noted Plaintiff's complaints of pain and injury." (*Id.*). On August 26, 2015, a physician diagnosed a "'small nondisplaced fracture of the ulnarseloid bone," which is located where handcuffs would contact a person's wrist. (*Id.*).

Although Butler is not mentioned in the "use of force" report, he is listed as a witness on both Plaintiff's disciplinary report for disobeying a verbal order and on the "MINS incident report." (*See* ECF No. 53-4, Ex. D at 1; ECF No. 53-5, Ex. E at 13). Robert Simmons, a fellow inmate, stated in an affidavit that once Plaintiff was placed in confinement, Plaintiff complained about his wrist. (ECF No. 4-1, Ex. C at 8). Simmons stated that he observed Plaintiff's swollen wrist. (ECF No. 4-1, Ex. C at 8). He also noted that Plaintiff eventually had a cast on his wrist. (*Id.*).

## C.    Defendant Hattaway's Version of the Events

Hattaway and Butler each submitted sworn declarations in support of their motion. (*See* ECF No. 53-1, Ex. A; ECF No. 53-2, Ex. B).[4] But only Hattaway relates a version of the facts that differs from the Plaintiff's narrative.[5] Hattaway states that

---

[4] Because the Plaintiff is *pro se* and does not have access to this court's electronic docket (ECF), references provided are to both the electronic version of the document as filed on the docket, followed by the relevant page number, and the hard copy of the exhibit.

[5] Butler's declaration entails only one sentence that addresses Plaintiff's allegations: "I am not aware and have no knowledge of the incidents described by Plaintiff in his

he was escorting Plaintiff to confinement after Plaintiff committed a violation of prison rules:  possession of a stimulant. (ECF No. 53-1, Ex. A at ¶ 2).  Plaintiff "lunged out of the wheelchair and attempted to run away from" Hattaway.  (ECF No. 53-1, Ex. A at ¶ 2). Hattaway grabbed Plaintiff's lower left arm and directed him to stop running away. (*Id.* at ¶ 2). When Plaintiff continued to pull away, Hattaway ordered him to cease. (*Id.* at ¶ 2). Ultimately, Hattaway found it necessary to grab Plaintiff's upper left arm to place him prone on the ground. (*Id.* at ¶ 2). Once Plaintiff was on the ground, "he stopped resisting and all force ceased." (*Id.*). Plaintiff then underwent a post "use of force exam" and then was placed in confinement. (ECF No. 53-1, Ex. A at ¶ 2).

Hattaway denies being verbally hostile to the Plaintiff. (*Id.* at ¶¶ 2, 3). He also denies intentionally twisting Plaintiff's arms behind his back, striking his head and face with a radio, battering Plaintiff, and throwing him on the floor of a confinement cell. (*Id.* ¶ 5). Hattaway also denies seeing Butler roughly place Plaintiff in the

---

amended complaint that allegedly occurred on August 18, 2015." (ECF No. 53-2, Ex. B at ¶ 2)). Despite this denial, the Okaloosa Correctional Institution's disciplinary report for the incident lists Butler as one of the witnesses. (ECF No. 53-4, Ex. D at 1). Defendants do not explain this discrepancy.

wheelchair or hearing Butler make aggressive statements toward the Plaintiff. (*Id.* at

¶ 4).

Plaintiff was issued two disciplinary reports, one for possession of a synthetic

cannabinoid (K2) and one for disobeying Hattaway's order. (ECF No. 53-3 Ex. C at

2; ECF No. 53-4, Ex. D at 1). The disciplinary report for disobeying Hattaway's

orders lists Butler as a witness.  (ECF No. 53-4, Ex. D at 1).[6] The disciplinary hearing

team found Plaintiff guilty of both charges. (ECF No. 53-3, Ex. C at 2; ECF No. 53-

4, Ex. D at 1).

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). An issue of fact is "material"

if it could affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357

F.3d 1256, 1259 (11th Cir. 2004); *Haves v. City of Miami*, 52 F.3d 918, 921 (11th

Cir. 1995) ("The mere existence of some factual dispute will not defeat summary

---

[6] Butler is not mentioned in the "use of force" report, however. (ECF No. 53-5, Ex. E).

judgment unless that factual dispute is material to an issue affecting the outcome of the case.").

In addition, when addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249, 106 S. Ct. at 2510-11. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512.

All "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to the relevant facts. *Beard v. Banks*, 548 U.S. 521, 529, 126. S. Ct. 2572, 2578 (2006); *see Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.

Ct. 1348, 1356 (1986). "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Anderson*, 477 U.S. at 250-51, 106 S. Ct. at 2511.

## III.    Discussion

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must put forth sufficient evidence demonstrating that: (1) a defendant deprived him of a right secured under the United States Constitution or federal law; and (2) such deprivation occurred under color of state law. *Lividas v. Bradshaw*, 512 U.S. 107, 132, 114 S. Ct. 2068, 2083 (1994); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 1604 (1970); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017); *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015).

As to whether the Defendants acted under color of law, the parties do not dispute that, at all relevant times, the Defendants were employed by the Florida Department of Corrections as prison guards and were functioning as such. A defendant acts "under color of law" when he exercises "'power possessed by virtue of state law and made possible'" only because he was "'clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941)). "Prison authorities are clearly persons acting under color of state law . . . ." *Thomas v. Gunter*, 32 F.3d 1258, 1259 (8th Cir. 1994). The Defendants, therefore, were acting

under color of law, even if, as Plaintiff alleges, they misused their authority to violate constitutional rights. *See Screws v. United States*, 325 U.S. 91, 111, 65 S. Ct. 1031, 1040 (1945) (plurality opinion) ("Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."); *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1268 (11th Cir. 2012) ("A § 1983 defendant who abuses the power and authority given to her by the state acts under color of state law.").

The Defendants, however, dispute whether the Plaintiff has created a genuine issue of material fact as to the deprivation of rights element, the applicability of qualified immunity and Eleventh Amendment immunity, and the types of damages available to the Plaintiff.

## A.    Excessive Force Claim Against Hattaway

Defendants first argue that Plaintiff failed to set forth sufficient evidence to create a genuine issue of material fact as to his claim that Hattaway violated the Eighth Amendment by using excessive force on the Plaintiff.  (ECF No. 53 at 8-15).

"The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." *Campbell v. Sikes*, 169 F.3d 1353, 1362 (11th Cir. 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994)). The Eighth Amendment forbids state actors from inflicting cruel and unusual punishment on prisoners. *Wilkens v. Gaddy*, 559

U.S. 34, 37, 130 S. Ct. 1175, 1178 (2010) (per curiam); *Whitley v. Albers*, 475 U.S. 312, 318-19, 106 S. Ct. 1078, 1083-84 (1986); *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). Use of excessive force by prison officials falls under the Eighth Amendment's proscription against cruel and unusual punishment when it is applied maliciously and sadistically for the very purpose of causing harm. *Whitley*, 475 U.S. at 319, 106 S. Ct. at 1084; *Campbell*, 169 F.3d at 1374. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments clause . . . ." *Whitely*, 475 U.S. at 319, 106 S. Ct. at 1084.

The "core judicial inquiry" in considering an Eighth Amendment excessive force claim, therefore, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 38-39, 130 S. Ct. 1175, 1178-79 (2010) (per curiam); *Stephens*, 852 F.3d at 1328 n.33. "To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Hudson*, 503 U.S. at 7-

8, 112 S. Ct. at 999); *see also Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085.

As the markedly conflicting narratives set forth above demonstrate, there is a fundamental dispute between the parties as to whether the force used was lawful (to obtain Plaintiff's compliance with Hattaway's orders) or malicious. Hattaway's declaration indicates that Plaintiff was noncompliant, lunged from a wheelchair while being transported to confinement, and then tried to break from Hattaway's hold. If true, Hattaway's use of force may have been justified.

Plaintiff however, in his verified complaint, deposition testimony, and affidavit, alleged facts that indicate Defendant Hattaway's use of force was excessive and was not employed to restore discipline. Rather, under Plaintiff's version of events, Hattaway's use of force was maliciously and sadistically designed to cause pain to the Plaintiff. For example, according to Plaintiff, Hattaway made derogatory statements prior to the use of force which support Plaintiff's contention that Hattaway's decision to use force was designed to inflict gratuitous pain on Plaintiff. Furthermore, as to whether there was a justification for the use of force,

Plaintiff denies that he disobeyed a verbal order or attempted to exit the wheelchair. Rather, Plaintiff contends that Hattaway removed him from the wheelchair and threw him to the ground without justification.

Accordingly, the Defendants have not demonstrated an "absence of a genuine issue of material fact" as required for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); s*ee also Anderson,* 477 U.S. at 247-48, 106 S. Ct. at 2510. Defendants' evidence does not conclusively refute Plaintiff's allegations. Rather, it merely creates a "swearing contest," and a "swearing contest" between "interested witnesses" is a conflict for the jury to resolve. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to summary judgment); Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1(B), (C), (F); s*ee also Joassin v. Murphy*, 661 F. App'x 558, 559-60 (11th Cir. 2016) (holding that a prisoner's sworn testimony creates a genuine issue of material fact, and that prisoner's testimony is not conclusively refuted by the testimony of interested prison officials who are defendants or colleagues of defendants).

Defendants assert that summary judgment is appropriate in this case, despite the conflicting evidence concerning material facts. They argue that no reasonable jury could possibly believe the Plaintiff. (ECF No. 53 at 11-15). They essentially make three arguments on this score: (1) the Plaintiff's allegations are blatantly

contradicted by the record; (2) Plaintiff's claims are inherently incredible; and (3) contradictions between Plaintiff's verified complaint and his deposition testimony indicate mendacity.

### 1.    *Blatant Contradiction by the Record*

The Eleventh Circuit has observed that "when 'opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it,' a court should not adopt the contradicted version for purposes of ruling on a motion for summary judgment." *Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. at 380, 127 S. Ct. at 1776). In both *Singletary* and *Scott*, however, the non-movant's version of events was discredited by contradictory and irrefutable *video evidence*. *See Singletary*, 804 F.3d at 1183-84; *Scott*, 550 U.S. at 380, 127 S. Ct. at 1776. Notably, Defendants have not submitted a video recording of Hattaway's complete interactions with Plaintiff that demonstrates that Plaintiff is prevaricating and that Hattaway's version of events is correct. Accordingly, there is no blatant contradiction of Plaintiff's assertions by incontrovertible evidence.

### 2.    *Inherent Incredibility*

Summary judgment also may be appropriate when one party's version of the facts is "'inherently incredible and could not support reasonable inferences sufficient to create an issue of fact . . . .'" *Perez v. Suszczynski*, 809 F.3d 1213, 1221 (11th Cir.

2016) (quoting *Riley v. City of Montgomery*, 104 F.3d 1247, 1251 (11th Cir. 1997)). The same is true if the moving party's evidence "so utterly discredit[s]" the testimony of the non-moving party's witnesses such "that no reasonable jury could believe" them. *Perez*, 809 F.3d at 1221 (citing *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013)).

Here, there certainly are reasons to doubt Plaintiff's claims—he already has been convicted of a felony, he has incentive to lie (especially if he was angry at Hattaway for his role in disciplining the Plaintiff for possessing synthetic cannabinoids), and there are multiple contradictions between his verified compliant and his deposition testimony. But it cannot be said that his claims are so outlandish or inherently incredible as to warrant summary judgment. His claims do not violate the laws of physics or otherwise entail claims that could not possibly be true. Prison guards sometimes use excessive force on prisoners, so there is nothing inherently incredible in such a claim. A reasonable jury, after hearing and seeing all of the evidence, could find for the Plaintiff on his excessive force claim. The key issue is the credibility of the witnesses, and it is inherently a function of the trier of fact to assess credibility and an inappropriate basis for a court to grant summary judgment absent incontrovertible evidence. *See Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1220 (11th Cir. 2017) ("In deciding whether to grant summary

judgment, a district court may not weigh conflicting evidence or make credibility determinations.") (quotations omitted).

### 3.    *Plaintiff's Contradictions*

Defendants also point to contradictions between Plaintiff's verified complaint and his deposition testimony. Plaintiff's contradictions, however, could be attributable to memory deficiencies that could arise when a deposition occurs almost three years after the event the witness is attempting to recall. Even inconsistencies closely related to the use of force, such as the number of times Plaintiff was removed from the wheelchair, are not meaningfully problematic. Across his amended complaint, deposition testimony, and affidavit,[7] Plaintiff consistently maintained the core of his allegations: that he was on the ground after being in a wheelchair, Hattaway slammed his knees into Plaintiff's back, hit Plaintiff over the head with a radio, and twisted his arm behind his back to adjust the handcuff position. (*See* ECF Nos. 4, 53-6, & 63). From this, it is clear that Plaintiff's version of events is not "inherently incredible" and that the record as advanced by all parties "plainly yields sharply dueling accounts of what happened." *Perez*, 809 F.3d at 1221. Plaintiff's contradictions, therefore, do not compel entry of summary judgment in this case.

---

[7] In considering Plaintiff's post-deposition affidavit, the undersigned was mindful that courts "may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003).

Rather, "weighing the contradictory statements along with the explanations for those contradictions are judgments of credibility. Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." *McCormick*, 333 F.3d at 1240 n.7.

### B.    Failure to Intervene and Protect Claim Against Butler

Defendants also seek summary judgment on Plaintiff's Eighth Amendment claim against Butler for Butler's alleged failure to intervene and protect Plaintiff from Hattaway's use of force. (ECF No. 53 at 15-16).

A prison official's "deliberate indifference" to a substantial risk of serious harm constitutes a violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974 (1994). Accordingly, a prison guard who fails to intervene and protect a victim when another prison guard uses excessive force can be held personally liable for his nonfeasance. *Skrtich*, 280 F.3d at 1301; *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985).

There are at least five factual prerequisites to liability in a "failure to intervene" case, and there is both a subjective and objective element:

(1) the correctional officer must have actually known about an attack on an inmate;

(2) he must have had an opportunity to intervene, from a temporal, spatial, and physical perspective;

(3) he failed to intervene and protect the inmate;

(4) this failure to intervene was unreasonable; and

(5) the plaintiff suffered some substantial harm that he would not have endured had the correctional officer intervened.

*See Farmer*, 511 U.S. at 844, 114 S. Ct. at 1982-83 ("[P]rison officials who actually knew of a substantial risk to inmate . . .  safety may be found free from liability if they responded reasonably to the risk . . . ."); *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015); *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (holding that "it must also be true that the non-intervening officer was in a position to intervene yet failed to do so"); *Priester*, 208 F.3d at 924 (acknowledging that liability "only arises when the officer is in a position to intervene and fails to do so"); *Ensley*, 142 F.3d at 1407 ("Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence.").

Defendants argue that there is insufficient evidence for Plaintiff's failure to intervene and protect claim to proceed to trial. First, Defendants argue that Butler

was not in a position—in the spatial sense—to assist the Plaintiff. (ECF No. 53 at 16). Defendants argue, for example, that Butler is not mentioned in any of Okaloosa Correctional Institution's documents regarding the incident. (ECF No. 53 at 15). Defendants are correct that Butler is not mentioned in the "use of force" report itself, but Hattaway appears to be the author of the use of force report, so this omission should not be fatal to Plaintiff's claim. (ECF No. 53-5, Ex. E). The fact that one Defendant may have omitted to mention that another Defendant was present does not warrant summary judgment. Furthermore, Butler *is* listed as a witness on both Plaintiff's disciplinary report for disobeying a verbal order, (ECF No. 53-4, Ex. D at 1), and on the "MINS incident report." (ECF No. 53-5, Ex. E at 13). Thus, the Defendants' own evidence strongly suggests that Butler was present, despite his indications to the contrary. Furthermore, despite variations in Plaintiff's testimony about Butler's exact role, he clearly alleged in his verified complaint and deposition testimony that Butler was present during Hattaway's use of force, and he further alleged that Butler failed to intervene and protect the Plaintiff. That is sufficient evidence to withstand Defendants' motion for summary judgment on this claim.

Second, Defendants note that, in his deposition, Plaintiff mistakenly referred to Butler as "Officer Murphy" approximately five times. (ECF No. 53-6, Ex. F at 6, 7, 17, 18). But Plaintiff's intention to identify Butler is apparent from his use of Butler's first name, "Timothy." Furthermore, the record indicates that the Plaintiff

recognized that "Officer Murphy" might not be the Defendant Butler's correct name

insofar as Plaintiff immediately stated: "whatever they pronounce his name":

> A.    And then he say, Well, we going to call the - - for a
> wheelchair.
>
> So they brought - - they brought a wheelchair. They put
> me in a wheelchair. So when we get in the sally port and
> then that's when all of them officers is coming in trying to
> find out what's going on because it's the middle of the
> night so you got to have security. And then there was
> Officer Murphy, Timothy, whatever you pronounce his
> name - -
>
> Q.    What, the - -
>
> A.    - - Murphy - -
>
> Q.    - - Officer Murphy?
>
> A.    - - Officer Murphy and Sergeant Hattaway, they
> approached me. So when they approached me they asked
> me what is wrong with me. Say, Is you high?

(ECF No. 55-6, Ex. F at 6). Later in his deposition, when the Defendants' attorney

referred to the Defendants as "Butler and Hattaway," Plaintiff immediately agreed

that it was "Butler and Hattaway" who were involved. (ECF No. 53-6, Ex. F at 20).

From that point forward, Plaintiff never again referred to Butler as "Murphy," and

then always referred to him as "Butler." (ECF No. 53-6, Ex. F at 30, 31, 35, 36, 37,

38, 41, 42, 43, 44).

   Defendants suggest that these and other contradictions are indications of

mendacity and are not mere mental errors. That may be so, and it is certainly true

that Plaintiff's deposition testimony is convoluted and difficult to follow, which may indicate that Plaintiff was dissembling. But as to whether the Plaintiff was lying, that is a determination to be made by the trier of fact. Assuming that these misstatements are simply mental mistakes, a Plaintiff's mistakes during a deposition should not result in summary judgment so long as there remains a genuine issue of material fact. A contrary rule would conflict with the established policy of resolving issues on their merits. *See Foman v. Davis*, 371 U.S. 178, 181-82, 83 S. Ct. 227, 230 (1962) (noting the preference in American law for cases to be decided on their merits); *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1342 (11th Cir. 2014) (noting the "strong preference that cases be heard on the merits"). It also would conflict with the rule that facts "must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S. Ct. at 1356. Thus, Defendants have not carried their burden of demonstrating that there are no genuine issues of material fact. Summary judgment, therefore, also is not proper on Plaintiff's failure to intervene and protect claim against Butler.

C.    **"Deliberate Indifference to a Serious Medical Need" Claim Against Both Defendants**

Both Defendants also seek summary judgment on Plaintiff's claim for deliberate indifference to a serious medical need regarding the Defendants' purported failure to provide Plaintiff with medical treatment after Hattaway's use of force. (ECF No. 53 at 18-22).

"'[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.'" *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06 (1989)). Because an inmate "must rely on prison authorities to treat his medical needs," prison officials have an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976).

To violate the Eighth Amendment's duty to provide medical care, an "express intent to inflict unnecessary pain is not required." *Whitley*, 475 U.S. at 319, 106 S. Ct. at 1084. Rather, to prevail on an Eighth Amendment claim for providing inadequate medical care, a plaintiff must show that a defendant showed "deliberate indifference" to his "serious medical needs." *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291; *see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998 (1992) ("[T]he appropriate inquiry when an inmate alleges that that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"). Thus, courts "considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional

violation." *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S. Ct. 2321, 2324, 2326 (1991)). This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow*, 681 F.3d at 985; *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). Accordingly, to prevail on an Eighth Amendment claim of deliberate indifference to a serious medical need, a plaintiff must show:

(1) he had a serious medical need;

(2) a defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007); *Taylor*, 221 F.3d at 1258.

### 1.    *Serious Medical Need*

To prevail on a  claim of failure to address a prisoner's serious medical need, a Plaintiff first must demonstrate the existence of a "serious" medical need. *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291. Because "society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"

*Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000 (quoting *Estelle*, 429 U.S. at 103-04, 97 S. Ct. at 290-91). A prison's decision "not to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution. The Constitution is not a charter of protection for hypochondriacs." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Hence the requirement that a plaintiff demonstrate the existence of an objectively serious medical need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Mann*, 588 F.3d at 1307 (quoting *Farrow*, 320 F.3d at 1243).

A plaintiff can establish that he had an objectively serious medical need in various ways. Among other things, he can show that he suffered an injury or aliment that:

(1)    had "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann*, 588 F.3d at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002));

(2)    a delay in treating would result in exacerbating the condition or harming the prisoner's health. *Mann*, 588 F.3d at 1307; *Hill*, 40 F.3d at 1188-89; or

(3)    a delay in treating would result in the prisoner suffering substantial

pain. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. 292 (internal quotation marks omitted);

*Melton v. Abston*, 841 F.3d 1207, 1232 (11th Cir. 2016); *Taylor*, 221 F.3d at 1257;

*McElligott v. Foley*, 182 F.3d 1248, 1255-59 (11th Cir. 1999); *Cooper*, 97 F.3d at

917; *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995) (A "delay in access to

medical care that is tantamount to unnecessary and wanton infliction of pain may

constitute deliberate indifference to a prisoner's serious medical needs.") (quotation

omitted).

In this case, Plaintiff contends that he suffered from a non-displaced fracture

of the ulnarseloid bone in his right wrist. (ECF No. 63 at 8). Various courts have

held or assumed that a bone fracture in the wrist constitutes a serious medical need.

*Miller v. Steele-Smith*, 713 F. App'x 74, 78 (3d Cir. 2017) (noting that the parties

agreed that a fractured wrist constituted a serious medical need); *Zaya v. Sood*, 836

F.3d 800, 805 (7th Cir. 2016) (noting that the parties did not dispute that a fractured

wrist constituted a serious medical need); *Johnson v. Cook*, 481 F. App'x 283, 284

(8th Cir. 2012) (holding that a failure to treat a painful fractured wrist sufficiently

stated a claim for deliberate indifference); *Davis v. Samalio*, 286 F. App'x 325, 328

(7th Cir. 2008) (assuming that a wrist fracture constituted a serious medical need);

*see also Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994) (stating that

delayed treatment "for injuries that are of a lesser degree of immediacy than broken

bones" may give rise to constitutional claims). Therefore, the undersigned will assume that Plaintiff suffered from a serious medical need.

### 2.   *Deliberate Indifference*

An inmate also must show that a defendant was deliberately indifferent to his "serious" medical need. *Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1864 (2017); *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978; *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327 (1991); *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291. This "requires 'more than ordinary lack of due care for the prisoner's interest or safety.'" *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978 (quoting *Whitley*, 475 U.S. at 319, 106 S. Ct. at 1084). Thus, "accidental or inadvertent failure to provide adequate medical care to a prisoner" does not violate the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993). Rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. Deliberate indifference requires "the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *see Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference").

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (noting that the "subjective prong of deliberate indifference is an extremely high standard"). In other words, the "deliberate indifference standard is 'a difficult burden for a plaintiff to meet' . . . ." *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990)); *Toguchi v. Chung*, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004) (noting that deliberate indifference is a "high legal standard" requiring actual knowledge); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard . . . .").

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842, 114 S. Ct. at 1981; *see United States v. Santos*, 553 U.S. 507, 521, 128 S. Ct. 2020, 2029 (2008) (plurality opinion) (noting that a person's possession of knowledge usually must be proven by circumstantial evidence); *Staples v. United States*, 511 U.S. 600, 615 n.11, 114 S. Ct. 1793, 1802 n.11 (1994) (noting that a defendant's knowledge can be, and usually is, "inferred from circumstantial evidence"). When a defendant creates the serious medical need by using excessive

force, this can provide him with knowledge that the inmate has of a serious medical need. *Cooper*, 97 F.3d at 917. Accordingly, because "'a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.'" *McElligott*, 182 F.3d at 1255 (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999)).

In this case, Plaintiff contends that he suffered from a non-displaced fracture of the ulnarseloid bone in his right wrist. (ECF No. 63 at 8). He has not shown that this injury was objectively obvious to the Defendants at the time they interacted with the Plaintiff or that either Defendant had actual knowledge of this fracture. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that deliberate indifference requires that a defendant have actual knowledge of a serious condition, not just knowledge of its symptoms). True, Plaintiff's wrist was swollen at some point after the injury, but there is nothing in the record indicating that it was swollen when the Defendants interacted with the Plaintiff or that the Defendants saw that the wrist was swollen.

Plaintiff also has not shown that Hattaway and Butler are trained physicians with specialized medical knowledge that might have resulted in them realizing that Plaintiff suffered a fracture. But even if Plaintiff had shown that Defendants were experienced physicians, the failure of even a trained physician to diagnose a wrist

fracture is not sufficient to show deliberate indifference. *See Arceneaux v. Leger*, 251 F. App'x 876, 877 (5th Cir. 2007). Without some evidence that the Defendants possessed actual knowledge of Plaintiff's serious medical need, he cannot prevail on his deliberate indifference to a serious medical need claim. *See Webb v. Langly*, 267 F. App'x 910, 912 (11th Cir. 2008) (holding that plaintiff failed to show deliberate indifference when he failed to establish that the defendants knew he had suffered from a nasal fracture); *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (holding that an inmate with swollen cheek and split lip from altercation did not display an objectively serious medical need that would be obvious to a lay person). Defendants could not be deliberately indifferent to a serious medical need of which they were unaware. Accordingly, the Defendants are entitled to summary judgment on Plaintiff's claim of deliberate indifference to a serious medical need.

### 3.    *Evidence that Any Delay Caused Detrimental Effects*

Plaintiff cannot prevail on his deliberate indifference to a serious medical need claim for a second independent reason: he has not submitted any evidence demonstrating that any delay in receiving medical care caused him any harm.

"An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to

establish the detrimental effect of delay in medical treatment to succeed."[8] *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1182-84, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002); *see Thomas v. City of Jacksonville*, 731 F. App'x 877, 881 (11th Cir. 2018) (noting that the plaintiff failed to include any evidence that any delay produced negative consequences); *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (holding that to prevail on a claim that delay in medical care constituted cruel and unusual punishment, the plaintiff must put forth medical evidence to establish that a delay in medical treatment had a detrimental effect); *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) ("[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental."); *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (holding that summary judgment for defendants was warranted when the plaintiffs failed to submit medical evidence indicating that a delay in treatment resulted in any adverse effect); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1991) (holding that summary judgment was proper when there was "nothing in the record to suggest that" the

---

[8] Courts generally analyze this issue as part of the "serious medical need" inquiry. *See Cullor v. Baldwin*, 830 F.3d 830, 837 (8th Cir. 2016). The reasoning is, if an inmate cannot establish that he suffered significant harm from delayed treatment, his medical need must not have been "objectively serious" for purposes of the Eighth Amendment. *Id.*

inmate's "injuries were exacerbated in the slightest by the delay in providing treatment").

Here, the evidence submitted by the Plaintiff shows that he was not completely deprived of medical care. (ECF No. 4-1 at 16, Ex. F). Rather, his evidence demonstrated that the appropriate medical care was delayed by approximately eight days. (*Id.*). Specifically, plaintiff claims that excessive force was applied to him on August 18, 2015. (ECF No. 4 at 4). His evidence shows that, by August 26, 2015, prison medical staff obtained an x-ray of Plaintiff's wrist, diagnosed his fracture, and treated the Plaintiff. (ECF No. 4-1 at 16, Ex. F). Plaintiff has not submitted evidence showing that this delay in treating his wrist caused him any harm. He has not shown, for example, that any tardiness resulted in a permanent impairment or irreparable damage to his wrist. As for the pain he likely was suffering, there was no substantial delay in addressing that. Plaintiff asserts that, on August 18, 2015, immediately after the alleged beating, a nurse provided the Plaintiff with ibuprofen to treat his pain. (ECF No. 4 at 9, ¶ 18; ECF No. 53-6 at 50). Thus, Plaintiff has not shown an unreasonable lag in treating his pain. Without evidence of some detrimental effect caused by a delay in providing medical care, the Plaintiff cannot prevail on this claim. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . ."). For

this second independent reason, therefore, summary judgment should be granted for the Defendants on Plaintiff's claim of deliberate indifference to a serious medical need.

### D.    Conspiracy Claim Against Both Defendants

Defendants also seek summary judgment on Plaintiff's conspiracy claim against both Hattaway and Butler. (ECF No. 4 at 12-13).

Section 1985(3) prohibits conspiracies to violate constitutional rights. 42 U.S.C. § 1985(3); *Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1865-66 (2017); *Farese v. Scherer*, 342 F.3d 1223, 1230 (11th Cir. 2003). A plaintiff may state a claim for conspiracy to violate constitutional rights by showing that defendants agreed to deny a victim at least one constitutional right. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010); *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002). The essence of a conspiracy "is an agreement to commit an unlawful act." *Iannelli v. United States*, 420 U.S. 770, 777, 95 S. Ct. 1284, 1289 (1975); *see United States v. Shabani*, 513 U.S. 10, 16, 115 S. Ct. 382, 385-86 (1994). By definition, therefore, "a conspiracy requires at least two parties." *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1028 (10th Cir. 2002); *United States v. Geibel*, 369 F.3d

682, 692 (2d Cir. 2004) (noting that a conspiracy requires at least two parties to act in concert).

Because corporations are not real persons, they can only act through their agents. *Braswell v. United States*, 487 U.S. 99, 110, 108 S. Ct. 2284, 2291 (1988) ("Artificial entities such as corporations may act only through their agents . . . ."); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) ("In contrast to an individual, a corporation cannot act except through its officers, agents, and employees."). Therefore, agents acting on behalf of a corporate entity cannot conspire because a single entity "cannot conspire with itself." *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 768 (11th Cir. 2000).[9]

This is known as the "intracorporate conspiracy doctrine." *Ziglar*, 582 U.S. at ___, 137 S. Ct. at 1867 ("Under this principle—sometimes called the intracorporate-conspiracy doctrine—an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."). "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin*

---

[9] The intracorporate conspiracy doctrine does not apply to criminal cases or to civil RICO cases, but it does apply to section 1983 actions. *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1213 (11th Cir. 2018); *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323, 1326-27 (11th Cir. 2004).

*Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc); *see Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010). "Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew*, 206 F.3d at 1036; *Grider*, 618 F.3d at 1261.

The doctrine has been extended beyond private corporations and also applies to public entities. *Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001) (holding that where the "only two conspirators identified" were both city employees, the intracorporate conspiracy doctrine barred plaintiffs' § 1985 conspiracy claims); *see Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010) (stating that the "intracorporate conspiracy doctrine bars conspiracy claims against corporate or government actors accused of conspiring together within an organization").

Here, the parties do not dispute that both Defendants were employed by the Florida Department of Corrections and were acting within the scope of their employment during their interaction with the Plaintiff. *See Grider*, 618 F.3d at 1261 (noting that the scope-of-employment inquiry is whether the employee was performing a function that, but for the alleged constitutional violation, was within the purview of the employee's authority and in furtherance of the employer's

business).[10] Both Defendants, therefore, were agents of the Department of Corrections. When they acted, they acted on behalf of the Department of Corrections and did so clothed with its authority. *See McAndrew*, 206 F.3d at 1036 (noting that "the acts of a corporation's agents are considered to be those of a single legal actor"). For all relevant purposes, the Defendants were the Department of Corrections. The Department of Corrections, insofar as it is a single entity, lacks the multiplicity to form a conspiracy. It cannot form a conspiracy with itself. *McAndrew*, 206 F.3d at 1036 (holding that "just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself"). Accordingly, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine, and summary judgment should be granted for the Defendants on this claim.

### E.    Qualified Immunity for Both Defendants

Defendants also argue that summary judgement is proper on all claims because they enjoy qualified immunity. (ECF No. 53 at 22-23).

Qualified immunity is designed to balance the needs to fully protect constitutional rights while similarly protecting government employees from

---

[10] In *Grider*, the Eleventh Circuit noted that "one might reasonably believe that violating someone's constitutional rights is never a job-related function" of a state employee, but "the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally." *Grider*, 618 F.3d at 1261.

harassing litigation that can inhibit governmental functions. *Ziglar*, 582 U.S. at ___, 137 S. Ct. at 1866; *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093 (2012) (noting that qualified immunity balances the "vindication of constitutional rights and government officials' effective performance of their duties"). "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038 (1987).

The defense of qualified immunity, therefore, shields government officials performing discretionary acts "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2728 (1982); *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986); *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816 (1985) (observing that officials are immune unless "the law clearly proscribed" their actions); *Priester*, 208 F.3d at 925.

In order to establish qualified immunity, a defendant first must show that he was acting within the scope of his discretionary authority at the time of the alleged

constitutional violation. *Paez v. Mulvey*, ___ F.3d ___, 2019 WL 489048, at *4 (11th Cir. 2019); *Oliver v. Fiorino*, 586 F.3d at 898, 905 (11th Cir. 20019); *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). If the defendant does so, the burden then shifts to the plaintiff to overcome the official's qualified immunity. *Paez*, ___ F.3d ___, 2019 WL 489048, at *4; *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002); *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017); *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2017).

To overcome qualified immunity, a Plaintiff must put forth evidence indicating that the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011); *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009); *Hill*, 797 F.3d at 978; *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "If the official did not violate the law, the inquiry ends." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1200 (11th Cir. 2007); *see Scott*, 550 U.S. at 377, 127 S. Ct. at 1774. If the official did violate the Constitution, however, he is still entitled to qualified immunity if the right violated was not "clearly established" at the time of the violation. *McClish v. Nugent*, 483 F.3d 1231, 1248-49 (11th Cir. 2007).

To be "clearly established," the right had to have been "defined with specificity" prior to the alleged violation. *City of Escondido, Cal. v. Emmons*, 586

U.S. ___, 139 S. Ct. 500, 503 (2019) (per curiam); *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam). "For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester*, 208 F.3d at 926. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 590 (2018). If "case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997).

Here, the parties do not contest that the Defendants were acting within the scope of their discretionary authority to keep order and discipline in a prison. The Defendants also do not dispute that the constitutional rights at issue here—the Eighth Amendment right to be free from the use of excessive force and the Eighth Amendment right to be protected by a prison guard who observes an application of excessive force—were clearly and sufficiently established by August 2015. *See Wilkins*, 559 U.S. at 40, 130 S. Ct. at 1180; *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1084-85; *Hudson*, 503 U.S. at 6-7, 112 S. Ct. at 998-99.

Specifically, long before August 2015, the Eleventh Circuit had stated: "It is clearly established that all infliction of excessive force on a prisoner sadistically and

maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause." *Johnson v. Breeden*, 280 F.3d 1308,1321-22 (11th Cir. 2002). Also long before 2015, the Eleventh Circuit had stated that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich*, 280 F.3d at 1301. These decisions were based on earlier Supreme Court decisions that also clearly recognized these rights. See *Hudson*, 503 U.S. at 5, 112 S. Ct. at 998; *Whitley*, 475 U.S. at 318-19, 106 S. Ct. 1083-84; *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291.

Defendants contend, however, that the Plaintiff has not set forth sufficient evidence creating a genuine issue of material fact regarding the alleged violations of his rights. (ECF No. 53 at 24). As the discussion set forth above demonstrates, however, Plaintiff has set forth sufficient evidence to create a genuine issue of material fact regarding the commission of the alleged violations of his constitutional rights. Accordingly, the Defendants are not entitled to qualified immunity on these Eighth Amendment claims.

### F.    <u>Physical Injury and Compensatory and Punitive Damages</u>

Defendants also seek summary judgment on Plaintiff's claim for compensatory and punitive damages, arguing that Plaintiff's *de minimis* injuries do not qualify for such relief. (ECF No. 53 at 16-17).

The Prisoner Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"), was enacted "[i]n an effort to stem the flood of prisoner lawsuits in federal court." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). "The PLRA places substantial restrictions on the judicial relief that prisoners can seek, with the goal of 'reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints.'" *Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015) (quoting *Al-Amin v. Smith*, 637 F.3d 1192, 1195 (11th Cir. 2011)).

Part of the PLRA has been interpreted to preclude inmates from recovering compensatory and punitive damages for lawsuits claiming constitutional violations when filed while the inmate is in custody, unless the inmate-plaintiff suffered a physical injury or a sexual assault. *See* 42 U.S.C. § 1997e(e); *see Al-Amin*, 637 F.3d at 1199; *Harris*, 216 F.3d at 984-85. The relevant provision states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

By its own terms, section 1997e(e) does not bar claims for nominal damages or claims for injunctive relief. *Brooks*, 800 F.3d at 1307-08 ("[W]e hold that nothing in § 1997e(e) prevents a prisoner from recovering *nominal* damages for a

constitutional violation without a showing of physical injury."); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir.2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."); *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002) (noting that "Section 1997e(e) does not prevent a prisoner from obtaining injunctive" relief).   It does, however, preclude an award of compensatory or punitive damages in relevant cases when there was no physical injury or the commission of a sexual act, or when any injury was *de minimis*. *Brooks*, 800 F.3d at 1307; *El-Amin*, 637 F.3d at 1199.

To survive a motion for summary judgment on the basis of § 1997e(e), a plaintiff must establish that he was the victim of a sexual act or a physical injury that was more than merely a *de minimis* one. *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*."); *Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted); *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007). The requisite physical injury "need not be significant but must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *see Logan v. Hall*, 604 F. App'x 838, 840 (11th Cir. 2015) ("we have held that the injury need not be significant"); *Flanory v. Bonn*, 604

F.3d 249, 254 (6th Cir. 2010) (holding that the physical injury required by § 1997e(e) "need not be significant" but "must be more than *de minimis*").

Thus, fleeting pain or mere discomfort is insufficient to meet the "physical injury" standard of § 1997e(e). *Dixon*, 225 F. App'x at 799; *Oliver*, 289 F.3d at 629 (holding that back and leg pain allegedly caused by an overcrowded cell was insufficient to satisfy the physical injury requirement because by the inmate's own admission it was "nothing too serious"). Minor nausea or insomnia likewise is insufficient. *See Alexander v. Tippah Cty., Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (holding that minor nausea purportedly caused by placement in an unsanitary cell was insufficient); *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003) (holding that insomnia and loss of appetite caused by confinement in an unhygienic cell was insufficient).

Likewise, minor bruising is not sufficiently significant to meet the standard. *See Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (noting that "a sore, bruised ear lasting for three days" was a *de minimis* injury). Temporary pain, headache, difficulty breathing, and periodic episodes of back pain were held not to constitute sufficient "physical injury." *Quinlan v. Pers. Transp. Servs. Co., LLC.*, 329 F. App'x 246, 249 (11th Cir. 2009); *see Mann v. McNeil*, 360 F. App'x 31, 31 (11th Cir. 2010) (noting that vague

back injuries and scrapes and marks on knees and legs amount to only *de minimis* injuries).

One court has offered a helpful standard for determining when an inmate suffered a "physical injury":

> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. . . . Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

*Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).[11]

Consistent with this standard, the Eleventh Circuit held that a head injury that caused swelling and seizure, along with lacerations and contusions to the face, shoulders, and upper back, constituted more than a *de minimis* injury. *Johnson v.*

---

[11] Although not determinative, this court notes that the United States Sentencing Guidelines define "bodily injury" to include maladies that require medical attention. Specifically, the guidelines define "bodily injury" as "any significant injury; *e.g.,* an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, comment (n.1(B)). "Serious bodily injury" is defined as an injury involving "extreme physical pain" or "requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, comment (n.1(L)).; *see also United States v. Markle*, 628 F.3d 58, 63 (2d Cir. 2010) ("Although determining whether an injury is 'significant' requires a fact-specific inquiry, injuries warranting medical attention generally are deemed 'significant.'").

*Breeden*, 280 F.3d 1308, 1312, 1321 (11th Cir. 2002). A fracture to a bone likewise would constitute a "physical injury." *See McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018). More specifically, the fracture of a wrist normally would warrant a visit to a physician, particularly because it might inhibit use of the adjacent hand and fingers. A fracture, especially one that does not cause the bone to protrude through the skin, also might require diagnosis via an x-ray, which would require a visit to a health care professional. Furthermore, depending on its location, a fracture might require setting and a protective cast.

In this case, Plaintiff alleges, and sufficient evidence demonstrates, that Plaintiff was seen by a physician, an x-ray of his wrist was used to diagnose the fracture of his ulnarseloid bone, and that a cast was placed on his wrist. (ECF No. 44-1 at 13, 16). This indicates that his injury was sufficiently significant to warrant treatment by a physician, and not just medical attention.[12] Thus, Plaintiff has sufficiently created a genuine issue of material fact concerning whether his fractured wrist constitutes a "physical injury" for purposes of § 1997e(e).

---

[12] Mere examination by a medical professional would not suffice to show that an inmate suffered "physical injury," because even malingering prisoners likely would be afforded an examination by a nurse, physician's assistant, or physician to ensure that the inmate was not suffering from a serious medical condition. A rule that makes such examinations the test for "physical injury" would discourage prisons from conducting such examinations.

It is also worth noting that § 1997e(e) is an affirmative defense. *See Douglas v. Yates*, 535 F.3d 1316, 1320-21 (11th Cir. 2008) (holding that § 1997e(e) is an affirmative defense and not a jurisdictional limitation). Defendants have the burden of demonstrating the applicability of an affirmative defense and establishing all of its elements. *See Whatley v. Smith*, 802 F.3d 1205, 1209 (11th Cir. 2015); *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). The Defendants have not done so here. Thus, the trier of fact should not be precluded from considering an award of both compensatory and punitive damages unless the evidence (or lack thereof) at trial calls for such a limitation.

## G.  Eleventh Amendment Immunity for Both Defendants

Finally, Defendants also seek summary judgment regarding the remedies to the extent that the Plaintiff seeks compensatory and punitive damages pursuant to the Defendants acting in their official capacities.[13] (ECF No. 53 at 24-25).

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "It is also well established that even though a State is not named

---

[13] On the first page of his complaint, Plaintiff specified that he is suing the Defendants in "their official and individual capacities." (ECF No. 4 at 1).

a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355 (1974). As applied, the Eleventh Amendment generally bars actions for monetary relief "when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900, 908 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, 65 S. Ct. 347, 350 (1945)).

Under the Eleventh Amendment, a nonconsenting state may not be sued for damages in federal court unless the state voluntarily waives its immunity or Congress clearly abrogates it. *See Hans v. Louisiana*, 134 U.S. 1, 14-17, 10 S. Ct. 504, 507 (1890); *Cross v. Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995). Thus, the Eleventh Amendment to the United States Constitution bars suits in federal court in which a "State or one of its agencies or departments is named as the defendant." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100, 104 S. Ct. at 908; *see also Black v. Wigington*, 811 F.3d 1259, 1269 (11th Cir. 2016); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

When a plaintiff sues a state employee in his "official capacity," this "'generally represents only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3104 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55 (1978)); *Busby v. City of Orlando*, 931 F.2d

764, 776 (11th Cir. 1991) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent.") (quotation and footnote omitted). The "real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *see Lewis v. Clarke*, 581 U.S. ___, 137 S. Ct. 1285, 1291 (2017) ("The real party in interest is the government entity, not the named official.").

"Suits against state officials in their official capacities therefore should be treated as suits against the State." *Hafer*, 502 U.S. at 25, 112 S. Ct. at 361; *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017). That is, such suits should be considered barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101, 104 S. Ct. at 908 (A "suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."); *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993) (observing that "the Eleventh Amendment bars federal suits against state officials in their 'official capacity' because such actions seek recovery from state funds"); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (holding that the Eleventh Amendment bars lawsuits against state officials in their official capacities).

Here, Plaintiff has elected to proceed against the Defendants in both their personal and official capacities. (ECF No. 4 at 1). To the extent he is suing them in

their official capacities, the Eleventh Amendment precludes the recovery of damages. Plaintiff has not demonstrated that Florida has waived its Eleventh Amendment immunity. *See Gamble v. Florida Dep't of Health and Rehab. Servs.*, 779 F.2d 1509, 1520 (11th Cir. 1986) (holding that "Florida has not waived its Eleventh Amendment sovereign immunity"). Nor has he shown that Congress abrogated Florida's immunity. *Carr*, 916 F.2d at 1525 ("Congress has not abrogated eleventh amendment immunity in section 1983 cases."). He also is not seeking injunctive relief of the type permitted under *Ex Parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 454 (1908). Accordingly, the Defendants are entitled to summary judgment to the extent Plaintiff is suing them for damages in their official capacity.

## IV. Conclusion

Accordingly, for the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The motion for summary judgment filed by Defendants Hattaway and Butler (ECF No. 53) be **GRANTED IN PART** and **DENIED IN PART**.

2. The motion for summary judgment should be **GRANTED** as to:

   a. Plaintiff's Eighth Amendment claim against Defendant Hattaway and Defendant Butler for deliberate indifference to a serious medical need;

    b.  Plaintiff's claim against Defendant Hattaway and Defendant Butler for conspiracy to violate constitutional rights; and

    c.  Plaintiff's claims against Defendant Hattaway and Defendant Butler, in their official capacities, to the extent that the Plaintiff is seeking compensatory and punitive damages.

3.    Defendants' motion for summary judgment should be **DENIED** as to:

    a.  the Plaintiff's Eighth Amendment claim against Defendant Hattaway for excessive use of force; and

    b.  the Plaintiff's Eighth Amendment claim against Defendant Butler for failure to intervene and protect;

    c.  the Defendants' assertion of qualified immunity; and

    d.  the Defendants' assertion that 42 U.S.C. § 1997e(e) precludes any award of compensatory or punitive damages.

At Panama City, Florida, this <u>14th</u> day of February 2019.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.